IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

T.R.P. COMPANY, INC.,
a Nevada Corporation,

      Plaintiff,

vs.                                                   No. CIV 09-0816 RB/WDS

OCuSOFT, Inc., a Texas Corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's (herein "OCuSOFT") Motion to Dissolve Temporary Restraining Order (Doc. 4), filed on August 21, 2009, and Plaintiff's (herein "TRP's") Motion for Temporary Restraining Order and for Preliminary Injunctive Relief (Doc. 6), filed on August 24, 2009. Jurisdiction arises under 28 U.S.C. § 1332. The Court held a hearing on these motions on August 26, 2009, at which it received evidence and heard offers of proof and legal argument. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I find that OCuSOFT's motion should be granted and that TRP's motion should be denied.

**I.    Background.**

OCuSOFT is a distributor of over-the-counter eye care products distributed to retail establishments, including Walgreens, CVS, Wal-Mart, Target, and Albertsons. OCuSOFT conducts product research and development, testing, clinical evaluation, branding (including packaging and labeling) for the products it distributes. TRP assisted OCuSOFT in selling new products into chain stores through TRP's sales representative relationships and contacts; in expanding OCuSOFT's business by increasing the number of OCuSOFT products in stores; in maintaining ongoing personal

contact with buyers in chain stores; and in developing strategies to expand OCuSOFT's business. TRP and OCuSOFT have had a relationship for many years, first informally, and then pursuant to written agreements. The first written agreement was signed in 1997.

In 2006, TRP introduced and promoted two of its own brands of products, including an eye care product known as "Blur Relief." Additionally, TRP entered into a representative relationship with a company called Altaire, Inc. and promoted a store equivalent brand product of "Systane," which was a product for dry eyes, manufactured by Alcon Laboratories. At the same time, TRP also represented OCuSOFT's branded dry eye product "Tears Again Liquid Gel," as well as OCuSOFT's private label products sold for the treatment of dry eyes.

OCuSOFT considered TRP's actions to be a breach of TRP's duty to represent OCuSOFT products. TRP disputed OCuSOFT's assertion of breach. Settlement of the dispute led to the Amended and Restated Agency Agreement Between OCuSOFT, Inc. and Thomas R. Pominville (DBA: TRP Company), dated March 1, 2007 (hereinafter "the 2007 Agreement"), which is the subject of this lawsuit.

The 2007 Agreement contains the following provision:

> Until expiration or earlier termination of this Agreement, whichever occurs first, **Agent** may not now or in the future sell or otherwise exploit on his own behalf or on behalf of any other person or entity products that compete with Principal's Products on Schedule A or any future products which **Agent** is unsuccessful . . . in selling on behalf of **Principal**.

(2007 Agreement at ¶ 6.)

Paragraph 14 of the 2007 Agreement also contains an arbitration agreement, which provides:

> *Controlling Law and Arbitration*. The Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas. In the event of any dispute, difference, or question arising between the parties in connection with this Agreement or the discussion, negotiation, drafting, or liabilities of either party hereunder, then and in every such case such matter shall be settled by arbitration at

>Albuquerque, New Mexico, in accordance with the then-current Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

(Doc. 1-2.)

The parties do not dispute that the arbitration agreement is valid and enforceable.

On May 21, 2009, OCuSOFT received labeling artwork that was sent by Walgreens, an OCuSOFT customer represented by TRP under the 2007 Agreement. Walgreens mistakenly believed that the artwork was that of an OCuSOFT product. In fact, the product represented was not an OCuSOFT product, but rather a competitor (also represented by TRP) national brand equivalent for artificial tears. OCuSOFT alleges that the packaging identified the product as "Lubricant Eye Drops," and depicted the single use containers that are exactly the same as those used in similar OCuSOFT products.

According to Cynthia Barratt, CEO of OCuSOFT, when contacted, Tom Pominville of TRP admitted that he was "glad it's out in the open." (Cynthia Barratt Decl. at ¶ 15.) OCuSOFT alleges that it thereafter confirmed that TRP had again entered into an agreement to represent Altaire products. OCuSOFT maintains that a comparison of Altaire products and OCuSOFT products for dry eye relief shows that Altaire's products, which are now represented by TRP, compete directly with OCuSOFT's products, despite the 2007 Agreement's prohibition. The products have similar language on the packaging, and are all used for dry eye relief.

In a July 14, 2009 letter, OCuSOFT demanded that TRP cure the alleged breach within the 60-day cure period specified in the 2007 Agreement by terminating its competitive activity. (Pl. Ex. 111.) It also demanded that TRP return commissions paid by OCuSOFT to TRP for the period January 1, 2009 through April 30, 2009, in the amount of $272,983.62, and notified TRP that no commissions would be paid and commission amounts would be considered unearned from "May

1, 2009 until the date upon which the 'cure' of the breach is satisfied." (*Id.*)

On July 15, 2009, TRP demanded that OCuSOFT pay commissions. (Doc. 6-6, Pl. Ex. 4.) In an August 6, 2009 letter, TRP advised OCuSOFT that TRP was in the process of filing a lawsuit in New Mexico state court and that it would seek an order compelling arbitration. (Pl. Ex. 121.)

On August 6, 2009, TRP filed an action in New Mexico state court, seeking a temporary restraining order (herein "TRO") and preliminary injunctive relief (Count One), and an order compelling arbitration (Count Two). (Doc. 1-2.) The same day it filed its complaint, TRP obtained the TRO, which restrained OCuSOFT as follows:

> A. From making any further statement to any current or prospective TRP Representatives or Customers which would imply or suggest that TRP is in breach of the Agreement, that TRP does not or may not continue to act as Agent under the Agreement, or that TRP has wrongfully competed with OS' products on Schedule A of the Agreement that is Exhibit A to the Complaint in this matter ("Ex. A Agreement"); -- this includes without limitation at what is known as the ECRM Healthcare Show in Miami, Florida, beginning August 9, 2009 through August 12, 2009, and anywhere else;
>
> B. From making any disparaging comments or statements concerning TRP's business, ethics, or asserted improper competition, whatsoever; and
>
> C. So that Defendant OS is ordered to otherwise maintain the *status quo* under the Ex. A Agreement, and fill orders and continue to ship product to TRP's Customers, and pay TRP its commissions on such sales in accordance with the Ex. A Agreement.

In an August 11, 2009 letter, TRP notified OCuSOFT that OCuSOFT was in breach of the 2007 Agreement by failing to submit the issues raised in the July 14, 2007 letter to arbitration and stated that TRP had demanded arbitration by filing the lawsuit in New Mexico state court. (Pl. Ex. 122.) TRP has not filed a formal demand for arbitration in accordance with AAA rules, as provided by the arbitration provision contained in Paragraph 14 of the 2007 Agreement.

OCuSOFT removed the case to this Court on August 21, 2009. The Court held a hearing on August 26, 2009, at which it received evidence and heard offers of proof and legal argument. At the

4

conclusion of the hearing, the Court extended the TRO to August 31, 2009.

**III.     Discussion.**

TRP seeks a preliminary injunction (1) preventing OCuSOFT from engaging in certain behavior at the ECRM Healthcare Show; (2) preventing OCuSOFT from making any "disparaging" comments about TRP, "whatsoever"; and (3) compelling OCuSOFT to fill and ship orders and to pay TRP commissions. The Healthcare Show has already occurred. Therefore, TRP's first request is moot. At the August 26, 2009 hearing, counsel for OCuSOFT stated that OCuSOFT has continued to fill and ship orders to its customers. The 60-day cure period lapses in mid-September 2009. Thus, the only matters at issue are whether a preliminary injunction should issue preventing OCuSOFT from making disparaging comments about TRP and compelling OCuSOFT to pay TRP commissions until mid-September 2009.

The parties agree that the arbitration agreement is valid and enforceable. When parties have agreed to resolve disputes through arbitration, the Federal Arbitration Act stays the proceeding prevents the court from proceeding to trial. *See* 9 U.S.C. § 3. However, under Tenth Circuit precedent, this Court does have authority to issue injunctive relief preserving the status quo pending the initiation of an arbitration. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 727-28 (10th Cir. 1988). The Tenth Circuit has held that a preliminary injunction issued in a case scheduled for arbitration is only proper if it expires "when the issue of preserving the status quo is presented to and considered by the arbitration panel." *Id.* at 728; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993) (holding that a district court may grant injunctive relief only until an arbitration panel can consider whether the temporary injunctive relief should remain in effect).

Notably, "an injunctive remedy that would deprive an arbitration panel of the full span of

5

its broad authority over the parties and over all arbitrable issues would be contrary to the purpose and limitations of the Arbitration Act and transcend the court's power to preserve the pre-arbitration status quo." *Dutton*, 844 F.2d at 728. The status quo consists of the "last peaceable uncontested status existing between the parties before the dispute developed." *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quotations omitted). Therefore, the Court may issue injunctive relief preserving the status quo that existed before the dispute developed pending the initiation of an arbitration.

In order to obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003) (quotation and citation omitted). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.* at 1256. As the party seeking the preliminary injunction, TRP bears the burden of proof. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1075 (10th Cir. 2009).

In examining the preliminary injunction factors, "courts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation and citations omitted). TRP has failed to demonstrate that it would suffer irreparable harm if the preliminary injunction does not issue.

A plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (*quoting Greater Yellowstone*, 321 F.3d at 1258). The Tenth Circuit has explained:

> To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Irreparable harm is not harm that is merely serious or substantial. The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

TRP has failed to allege, or establish, any facts that demonstrate it faces immediate and irreparable injury. Significantly, TRP asserts that it "continues to possess current and exclusive contractual rights . . . to continue to broker the product, and to earn and be paid a commission" and OCuSOFT has breached the Agreement by "stating or implying TRP is in breach of contract, and that TRP has wrongfully competed, and that TRP will not or may not continue as [OCuSOFT's] agent." (Doc. 6 at 5-6.)

While such allegations are certainly serious, TRP has failed to explain how such facts constitute an irreparable harm. Any such harms would be compensable by monetary damages, thus removing them from the scope of harms contemplated in the irreparable harm context. Simply put, TRP has failed to establish the irreparable harm requirement. TRP has neither identified nor proven an irreparable harm that it would suffer if the TRO lapses.

As to the likelihood of success on the merits of the arbitration, the Court expresses no opinion. *See* 9 U.S.C. § 3. However, the Court does note that both parties agree that the arbitration agreement is enforceable. If TRP wishes to proceed to arbitration, it should do so in accordance

with the procedures set out in the arbitration agreement.

With respect to the third preliminary injunction factor, which is whether threatened injury to TRP outweighs the harm the preliminary injunction might cause OCuSOFT, TRP asserts that it must protect its interests and OCuSOFT had no right to communicate with its customers concerning TRP's actions.  (Doc. 6 at 8.)  Notably, the evidence does not support a claim of ongoing disparagement.  The risk of harm to OCuSOFT, if it is required to make unsecured commission payments, outweighs any potential harm TRP might incur by awaiting to obtain monetary damages following the entry of a final judgment.  It bears underscoring that TRP has neither identified nor proven an irreparable harm that it will suffer if the TRO lapses.  To be clear, the threatened injury to TRP does not outweigh the harm the preliminary injunction might cause Defendants.

Finally, TRP has offered nothing that would indicate that issuance of a preliminary injunction here would serve the public interest.  The Tenth Circuit has held that the FAA "evinces a strong policy in favor of arbitration." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).  By filing a lawsuit rather than pursuing arbitration in accordance with the 2007 Agreement, TRP frustrated the strong federal policy in favor of arbitration and undermined the public interest in conserving judicial resources, both state and federal. Under the circumstances of this case, it would not be in the public interest to grant the preliminary injunction.

Defense counsel having announced at the hearing Defendant's non-opposition to the matter being resolved by arbitration, Count II seeking an order compelling arbitration, is rendered moot.

## IV.     Conclusion.

TRP has not met its burden with respect to any of the preliminary injunction factors.  The Court finds that the injunctive relief requested by TRP should not issue.  The TRO should not be extended and the preliminary injunction should not be granted. Count II should be dismissed as

moot.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dissolve Temporary Restraining Order (Doc. 4), filed on August 21, 2009, is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunctive Relief (Doc. 6), filed on August 24, 2009, is **DENIED**.

**IT IS FURTHER ORDERED** that Count II is **DISMISSED AS MOOT AND THE PARTIES SHALL FORTHWITH PROCEED TO ARBITRATION.**

**IT IS FURTHER ORDERED** that this case is dismissed with prejudice.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**